# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**FRED ADAMS**     **PLAINTIFF**

vs.     **CIVIL ACTION NO. 3:19-CV-167-CRS**

**FAMILY DOLLAR STORES OF**     **DEFENDANTS**
**KENTUCKY, LP #11504,**

and

**MELVILLE FAMILY TRUST GBR**
**REAL ESTATE,**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion for leave to file cross-claim by Defendant Family Dollar Stores of Kentucky, LP #11504, DN 16. For the following reasons, Defendant Family Dollar Stores of Kentucky's motion for leave to file a cross-claim will be DENIED.

## I. Background

This motion arises in the context of this negligence action filed by Fred Adams ("Plaintiff") against Family Dollar Stores of Kentucky, LP #11504 ("Family Dollar") and Melville Family Trust GBR Real Estate ("Melville") for injuries Plaintiff alleges he sustained during a slip and fall at a Family Dollar store. DN 1-1, p. 33. Plaintiff alleges that on November 4, 2017, while walking outside the Family Dollar store at 3421 West Broadway in Louisville, Kentucky, he fell and sustained serious and permanent injuries. *Id.* Plaintiff alleges Family Dollar and Melville (owner of the property at 3421 West Broadway) were negligent in maintaining the sidewalk around the store, causing him to slip and fall. *Id.* On October 29, 2018, Plaintiff filed an initial complaint in Jefferson Circuit Court against three defendants—Family Dollar, Israel Gorinstein, and Rachel Gorinstein. *Id.* at 5. In his initial complaint, Plaintiff stated "Defendants Israel and Rachel, to the

best of Plaintiff's knowledge, own the property located at 1234 W. Broadway, Louisville, Kentucky." *Id*. at 6. In fact, Israel and Rachel Gorinstein did own the property located at 1234 West Broadway, and a Family Dollar store is located on that property. However, Plaintiff alleges his injuries occurred at different Family Dollar store, located at 3241 West Broadway, approximately 2.5 miles West of the property owned by the Gorinsteins.

On November 27, 2017, Plaintiff filed a "second amended complaint" that included Melville, the owner of the 3421 West Broadway property, as an additional defendant. *Id*. at 25. On January 8, 2019, Plaintiff filed a "third amended complaint," this time correcting the address of the alleged fall from 1234 West Broadway to 3421 West Broadway. *Id*. at p. 33. On April 12, 2019, Melville moved to dismiss Plaintiff's complaint for failure to file a claim within the one-year statute of limitations. DN 13. The motion was granted. DN 24. Earlier, on May 13, 2019, Family Dollar filed a motion for leave to file cross-claim against Melville based on (A) contractual indemnification (B) common law indemnification, and (C) apportionment and contribution. DN 16, p. 2. This memorandum will explain why Melville's motion on those grounds will be denied.

## II. Legal Standard

"A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). Federal Rule 13(g) does not impose any time limitations on the filing of cross-claims. *Id*. Accordingly, after the parties have filed their initial pleadings, any motion to amend those pleadings and file a cross-claim must be made pursuant to Federal Rule of Civil Procedure 15.

A party may only amend its pleading with "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id*. This rule gives effect to the principle that, as far as possible, cases should be determined on their merits and not on technicalities. *Cooper v. Am. Employers' Ins. Co*., 296 F.2d 303, 306 (6th Cir. 1961). Denial of leave to amend may be appropriate "where there is undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 690 (6th Cir. 2003). The motion for leave to file a cross-claim will be denied because the proposed cross-claim fails to state claims upon which relief can be granted and would, therefore, be "futile." *Id*.

## III. Discussion

### A. Contractual Indemnification

Family Dollar argues that Melville is bound by contract to indemnify Family Dollar for Plaintiff's claims. DN 16, p. 2. This argument is without merit. Under Kentucky law, parties to a contract may provide for contractual indemnification for costs incident to legal liability as well as legal liability itself. *Thompson v. Budd Co.*, 199 F.3d 799, 807–08 (6th Cir. 1999) (citing *United States Fidelity & Guar. Co. v. Napier Elec. & Constr. Co. Inc.,* 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)). However, if there is ever doubt as to whether a contract provides for indemnity, courts should interpret the contract against finding indemnification. *Amerco Marketing Company of Memphis, Inc. v. Myers,* 494 F.2d 904, 913-14 (6th Cir. 1974). Contracts must demonstrate a clear intent to indemnify a party. *Id.*

Family Dollar contends that the following section of the rental agreement requires Melville to provide full contractual indemnification should Family Dollar be deemed liable for any damages arising out of Plaintiff's negligence action:

> 12. MAINTENANCE AND REPAIRS. Landlord will remedy any defect in workmanship, materials or equipment furnished by Landlord pursuant to Paragraph 4 of this Lease provided Tenant notifies Landlord of the defect within 12 months after the Rent Commencement Date ("Landlord's 12-Month Obligation"). Landlord will maintain and repair and replace when necessary all exterior portions of the building constituting part of the Demised Premises, including the roof, exterior walls and also all structural portions of the building whether interior or exterior. Landlord will make all repairs and replacements to any portion of the Demised Premises where the damage or loss is caused by casualties or perils insurable under the insurance that landlord is required to carry pursuant to Paragraph 11(a). Landlord will also be responsible for making all repairs made necessary by the settling of the building constituting a part of the Demised Premises, all repairs to the interior of the building made necessary by Landlord's failure to maintain the exterior of the building, all repairs to the fire sprinkler system, if any, and all repairs to exterior (including under slab) plumbing and electrical lines. **Landlord will keep the parking, service and access areas (and other exterior areas, if any) maintained and in a good state of repair and property lighted**; provided however, that Landlord will not be responsible for the removal of snow, ice, trash, weeds and debris.
>
> Tenant will be responsible for maintaining the existing landscaping including mowing; snow plowing, removing trash and debris from the parking area and landscaped areas; restriping the parking area and repairing parking area lights. Tenant will maintain and repair all interior, non-structural portions of the building, except for repairs Landlord is required to make. **Tenant will be responsible for asphalt and concrete repairs until the aggregate costs equal $1,000 in any lease year. Landlord will promptly reimburse Tenant for any costs incurred by Tenant in excess of $1,000, and Landlord will have full responsibility for making, at Landlord's expense, any and all concrete and asphalt repairs for the remainder of such lease year**. For the purpose of determining the responsible party, any repair expense will be attributed to the lease year in which the repair is made.
>
> Neither Landlord nor Tenant will be responsible for repairs or replacements that are the direct result of the negligence of the other party unless the repairs or replacements are covered by insurance or required by this Lease to be covered by insurance; provided, if the party charged with negligence disputes that it negligently caused the condition needing the repair or replacement, then the party responsible for making the repair or replacement in the absence of the other party's negligence will make the repair or replacement, but will have the right to recover the reasonable

> costs of the repair or replacement from the negligent party unless the loss is covered or required to be covered by insurance.

DN 16-3, p. 11–12. (emphasis added by the Court).

The Court finds that the parties did not demonstrate an intent for Melville to indemnify Family Dollar for costs associated with the injuries sustained by Plaintiff. The section cited by Family Dollar (titled "Maintenance and Repairs") and quoted above discusses (1) what party is responsible for maintenance and repairs and (2) what party is responsible for the costs of those repairs. The parties did not agree on indemnification for costs incident to legal liability arising out of negligent sidewalk maintenance. Section 12 of the lease agreement states "Landlord will keep the parking, service and access areas (and other exterior areas, if any) maintained and in good state of repair and property lighted." *Id*. at 11. While this paragraph seems to indicate Melville was responsible for maintaining the sidewalk upon which Plaintiff claims to have fallen, it does *not* indicate the parties intended for indemnification to attach to that responsibility.

Furthermore, while the agreement states Melville would "keep the parking, service, and access areas…maintained," the agreement also contemplates sidewalk repairs as being the responsibility of Family Dollar. *Id*. For example, Paragraph 12 states "Tenant will be responsible for asphalt and concrete repairs until the aggregate costs equal $1,000 in any lease year. Landlord will promptly reimburse Tenant for any costs incurred by Tenant in excess of $1,000 and Landlord will have full reasonability for making, at Landlord's expense, any and all concrete and asphalt repairs for the remainder of such lease year." *Id*. at 12. This portion of the agreement supports Melville's contention that both Melville and Family Dollar shared some responsibility sidewalk maintenance. *See* DN 19, p. 9–10. Because the agreement lacks clear language indicating the parties' intent for Melville to indemnify Family Dollar for tort liability, this Court will not presume that such an intent existed. *See Amerco Marketing Company of Memphis, Inc. v. Myers,* 494 F.2d

5

904, 913-14 (6th Cir. 1974) ("[W]hen there is doubt as to the meaning of an indemnity clause the construction should be against the contention that the contract was meant to indemnify against an indemnitee's own negligence. We have said that every presumption is against such an intention." *Amerco Mktg. Co. v. Myers*, 494 F.2d 904, 914 (6th Cir. 1974) (citation omitted).

### B. Common Law Indemnification

In addition to contract indemnification, Family Dollar also perfunctorily asserts common law indemnification as grounds for its motion for leave to file a cross-claim. DN 16, p. 2. ("Family Dollar seeks to assert a cross-claim against Melville for full contractual indemnification and apportionment pursuant to the terms, conditions and obligations of the parties' Lease Agreement, as well as common law indemnification."). Even viewing the facts in the light most favorable to the non-moving party, Family Dollar fails to assert the necessary elements of a common law indemnity claim.

In *Degener v. Hall Contracting Corp.*, the Kentucky Supreme Court held that a party may recover under common law indemnity in two classes of cases:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) (citations omitted). In interpreting this standard, the *Degener* court evaluated the cases before it by distinguishing between the "active wrongdoer[s]" and the parties whose liability was "premised solely upon [their] failure to prevent" the torts. *Id*. at 781. In the cases cited by the *Degener* court, the parties who failed to prevent the harm were entitled to common law indemnity from the parties who actively caused the harm. *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936 (Ky. 1987); *Brown*

6

*Hotel Company v. Pittsburgh Fuel Co.,* 311 Ky. 396, 224 S.W.2d 165 (Ky. 1949). Therefore, for Family Dollar to state a plausible claim for common law indemnity under Kentucky law, Family Dollar must demonstrate that Melville was the primary, active tortfeasor and Family Dollar was the secondary, passive tortfeasor. Family Dollar fails to do so.

Family Dollar's own motion fails to allege facts necessary to support its common law indemnity claim. Out of Family Dollar's 59-page motion, the first two pages argue for "full contractual indemnification and apportionment pursuant to the terms, conditions and obligations of the parties' Lease Agreement." DN 16, p. 2. The remaining 57 pages consist of exhibits to support Family Dollar's contractual indemnification claim. *Id*. at 3–59. These contractual indemnification arguments are insufficient to sustain Family Dollar's proposed common law indemnification claim. Family Dollar fails to allege that Melville was responsible for the active tortious conduct which caused the alleged harm. Family Dollar further fails to allege that its conduct is secondary or passive compared to Melville.

This is inapposite to the parameters the Kentucky Supreme Court laid out for common law indemnity in *Degener*. *Degener*, 27 S.W.3d 775 (Ky. 2000). In *Degener*, Adam Degener and Eagle Tye constructed a homemade bomb using dynamite they stole from the Hall Contracting Corporation—dynamite Hall had stored in a non-theft-proof container. *Id*. At 777. After Degener and Tye's bomb exploded and injured three police officers, the officers sued Hall. *Id*. Hall subsequently filed a common law indemnity claim against Degener. *Id*. The State Supreme Court held that Hall's claim against Degener fell "squarely within the parameters of the common law right to indemnity," noting that Degener was the "active wrongdoer" and "Hall Contracting's liability [was] premised solely upon its failure to prevent them from making the bomb which injured the three officers." *Id*. At 781. In contrast to *Degener*, Family Dollar's claims against

Melville fall squarely *outside* the requirements for common law indemnification. Here, *both* parties are accused of *passively* neglecting their obligation to maintain the sidewalk or warn patrons of a hazard. Family Dollar fails to cite any Kentucky caselaw which would support the finding of common law indemnity between two parties, both of whom were alleged to have been the passive cause of the plaintiff's harm. Because Family Dollar has failed to carry its burden of demonstrating how its common law indemnity claim would not be futile, its motion for leave to file a cross-claim for common law indemnity will be denied.

### C. Apportionment and contribution

Family Dollar seeks leave to assert a cross-claim against Melville for apportionment and contribution. DN 16, p. 2. Family Dollar's motion will be dismissed because neither apportionment or contribution are "claims" under Kentucky law. *See Sommerkamp v. Linton*, 114 S.W.3d 811, 817 (Ky. 2003) ("Contemporary apportionment requirements including KRS 411.182 provide that fault in a tort action is automatically subject to apportionment among the parties to the action. This statute renders a cross-claim for contribution … needless."). According to Kentucky law, "liability among joint tortfeasors in negligence cases is no longer joint and several, but is several only." *Degener* 27 S.W.3d at 779. Kentucky Revised Statute § 411.182 provides "In all tort actions, including products liability actions, involving fault of more than one (1) party to the action . . ., the court . . . shall instruct the jury to [determine] . . . [t]he percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability." Kentucky Revised Statute § 411.182 "is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors, whether joined in the original complaint or by third-party complaint." *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 802-03 (Ky. 2005)

8

(internal quotation marks and citations omitted). "If there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required." *Floyd v. Carlisle Construction Co.*, 758 S.W.2d 430, 432 (Ky. 1988) (emphasis omitted). "In other words, § 411.182 provides a right to an apportionment interrogatory or finding where underlying substantive fault exists, but it does not provide a substantive cause of action itself." *Hall v. MLS Nat'l Med. Evaluations, Inc.*, No. 05-185-JBC, 2007 U.S. Dist. LEXIS 33909, at *8 (E.D. Ky. May 7, 2007).

Although this court has dismissed Plaintiff's claims against Melville, DN 24, an apportionment instruction may still be warranted at trial. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 824 (6th Cir. 2000) ("Section 411.182 apportionment encompasses named parties, including third-party defendants and parties dismissed for whatever reason."). Accordingly, the Court finds that Family Dollar does not have a "claim" against Melville for contribution or apportionment, either contractually or based in the common law. However, the Court finds that Family Dollar has asserted claims against the third-party defendant sufficient to preserve its right to apportionment pursuant to KRS § 411.182 if the evidence supports such an instruction at trial.

## VI. Conclusion

Motions having been made and for the reasons set forth herein and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Family Dollar's motion for leave to file cross-claim, DN 16, is **DENIED**.

November 14, 2019

Charles R. Simpson III, Senior Judge
United States District Court